THE PEOPLE ex rel. JOHN McMILIAN, Appellant, *v.* THE
BOARD OF SUPERVISORS OF CAYUGA COUNTY, Respondent.

Under the provision of the Railroad Act, as amended in 1871 (§ 1, chap.
283, Laws of 1871), which provides that taxes "collected for the next
thirty years,". on the assessed valuation of any railroad in any town,
village or city which "has issued or shall issue bonds to aid in the con-
struction of said railroad," shall be paid over to the county treasurer to
be applied to purchase said bonds for cancellation or to be invested as a
sinking fund for the redemption and payment of the bonds, a muni-
cipality which has issued such bonds is not entitled to any portion of
taxes paid by the railroad company, after the bonds have matured and
been paid in full by the municipality, although within the thirty years.

The meaning of the provision is that the taxes shall be paid as directed
during the period of the running of the bonds to maturity, and the
purpose was to aid municipalities only during a period not exceeding
thirty years when the bonds were outstanding and by the terms of the
act not payable. The same purpose is to be attributed to the act when
applying its provisions to bonds issued under special acts and payable
within thirty years.

The fact that a municipality neglected to enforce the right given to it by
the act for more than six years after the last taxes were collected to the
application of which it was entitled, furnishes no ground for the appli-
cation of the principle of subrogation.

(Submitted December 6, 1892; decided December 20, 1892.)

APPEAL from order of the General Term of the Supreme
Court in the fifth judicial department, made May 12, 1892,
which affirmed an order of Special Term denying an applica-
tion for a peremptory mandamus directed to the board of
supervisors of Cayuga county to compel that body to rescind
certain resolutions directing the county treasurer to repay to
certain of its towns which had issued bonds in aid of a railroad
corporation under the act of 1866 (Chap. 577, Laws of 1866)
taxes arising from assessments upon the property of said cor-
poration within the limits of said municipalities, which appli-
cation was based on the ground that such assessments were
made subsequent to the time when the bonds had matured
and been paid in full.

The facts, so far as material, are stated in the opinion.

*S. Edwin Day* for appellant. A town which has paid its railroad bonds and indebtedness more than six years ago, cannot recover against the county the amount of taxes since assessed on railroad property in such town. (*Strough* v. *Bd. Suprs.*, 119 N. Y. 212; *Johnson* v. *H. R. R. R. Co.*, 49 id. 455; *In re Miller*, 110 id. 222; *Stevens* v. *Ogden*, 130 id. 182; *Swift* 'v. *Luce*, 27 Me. 285; *Wood* v. *Bd. Suprs.*, 50 Hun, 1; *Bd. Suprs.* v. *Ellis*, 59 N. Y. 624; *People ex rel.* v. *Bd. Suprs.*, 73 id. 173; *People* v. *Suprs.*, 17 Wkly. Dig. 139.) A person or municipal corporation may waive a statutory right. (*In re Cooper*, 93 N. Y. 507; *Tombs* v. *R. & S. R. R. Co.*, 18 Barb. 583; *Duryee* v. *Mayor, etc.*, 96 N. Y. 477.) The discretion of the court to grant or refuse the writ is not absolute, but is governed by legal rules and its exercise is subject to review in this court. (*People ex rel.* v. *Chapin*, 104 N. Y. 96.)

*William B. Woodin* for respondent. The interpretation of this statute contended for by the relator, imposes a penalty upon the debtor town for its fidelity and promptness in meeting its obligations, since if the bonds mature and are paid by the town at maturity, otherwise than by the use of the taxes levied and collected of the railroad within the town, and paid into the county treasury for that purpose, that which has been denominated by this court as an appropriation of taxes, as a special fund for the payment of the bonds of the town (119 N. Y. 216), ceases to be such, and the beneficial ownership or property right acquired in the taxes thus assessed and collected and paid into the county treasury is lost to the town, because there are in fact no "bonds outstanding" to the payment of which those taxes could be applied. (Laws of 1866, chap. 466; *Clark* v. *Sheldon*, 106 N. Y. 111.) The act of 1869, as amended by chapter 283 of Laws of 1871, gives to the municipality bonded, in its corporate capacity, the beneficial ownership of the fund created by the taxes collected from such railroads, when it directs their application to discharge a corporate obligation. (*Strough* v. *Bd. Suprs.*, 119 N. Y. 217; *Bridges* v. *Bd. Suprs.*, 92 id. 570.)

Peckham, J. The sole question in this case is whether a municipality, which has issued bonds pursuant to the provisions of law, in aid of a railroad corporation, is entitled to the fund, or any portion thereof, arising from the payment of taxes by the company on an assessment upon its property within the limits of such municipality, where the taxes thus paid were assessed upon the property of the railroad company subsequent to the time when the bonds issued by the municipality had matured and been paid in full by it.

The bonds mentioned in this record were issued under the authority of chapter 433 of the Laws of 1866, as amended by chapter 377 of the Laws of 1867, both acts relating to the construction of the Southern Central railroad, and both being passed for the purpose of facilitating the construction of that road.

The towns claim the benefit of the moneys paid for taxes upon the property of the railroad within their respective borders, after the payment of the town bonds, because, as they allege, the provisions of section 4 of chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871, so direct.

The bonds of all the different towns were made payable within twenty years from their issue, some of them being payable at the expiration of nine, and the longest at the expiration of seventeen years from that time The act, chapter 433 of the Laws of 1866, under which, as amended by the act of 1867, the bonds were issued, provided that the bonds should be issued for a term not exceeding thirty years. These two special acts, relating to the Southern Central railroad, contained no provision for the payment to the towns of the amount of the taxes collected from the railroad company upon its property within the towns respectively. Assuming that the provisions of the act of 1869, as amended by that of 1871, cover the bonds issued under the acts specially applicable to the Southern Central railroad, the respondents claim the right of the towns to the payment of the taxes spoken of, for thirty years after the issuing of the bonds.

The material portion of the amended act of 1871, section 1, under which this claim is made, reads as follows : * * * " All taxes, except school and road taxes, collected for the next thirty years, or so much thereof as may be necessary in any town, village or city, on the assessed valuation of any railroad in said town, village or city, for which said town, village or city has issued or shall issue bonds to aid in the construction of said railroad, shall be paid over to the treasurer of the county in which said town, city or village lies.   It shall be the duty of said treasurer, with the money arising from taxes levied and collected as aforesaid, which has heretofore been or shall hereafter be paid to him (including the interest thereon), to purchase the bonds of said town issued by said town, to aid in the construction of any railroad or railroads, when the same can be purchased at or below par ; the bonds so purchased to be immediately canceled by said treasurer and the county judge, and deposited with the board of supervisors.   In case said bonds so issued cannot be purchased at or below the par value thereof, then it shall be the duty of said treasurer, and he is hereby directed, to invest said money so paid to him as above mentioned, with the accumulated interest thereon, in the bonds of this state, or of any city, county, town or village thereof, issued pursuant to the laws of this state, or in the bonds of the United States.   The bonds so purchased, with the accumulated interest thereon, shall be held by said county treasurer as a sinking fund for the redemption and payment of the bonds issued, or to be issued, by said town, village or city in aid of the construction of said railroad or railroads."

The claim of the respondents is founded upon that portion of the act which provides that "All taxes   *   *   *   collected for the next thirty years   *   *   *   on the assessed valuation of any railroad in said town   *   *   *   shall be paid over to the treasurer of the county," etc.   The respondents completely ignore the balance of the section, which provides what shall be done by the county treasurer with the moneys thus collected.   The resolution which has been passed by the board of supervisors is not warranted by any provision of the statute.

The resolution directs the county treasurer to forthwith place a certain named sum to the credit of the town.   The statute provides for the county treasurer making a certain disposition of the funds raised by taxation from the railroad property, and it is never placed to the credit of the town in the manner provided for in the resolution adopted by the board.

The authorities of a town have no right under this act to divert or appropriate these taxes for other purposes (*Bridges* v. *Supervisors, etc.*, 92 N. Y. 570; *Matter of Clark* v. *Sheldon*, 106 id. 104–110).   The moneys never come into the hands of the county treasurer for any other purpose than that mentioned in the section and they must be held and invested in the mode directed.   It is absurd to provide for payment of money to a county treasurer to be expended by him for the benefit of a town by the purchase of its bonds, which it has already paid in full and canceled.   It is equally absurd to provide for the investment by such county treasurer of such taxes in certain other classes of bonds in order to form a sinking fund for the payment of bonds already paid in full.   And yet the section provides for only these two dispositions of the moneys arising from these taxes, and the treasurer is at liberty to make no other.   The disposition provided for is impossible in this case because there are no bonds outstanding and it was to constitute a fund for their payment that the disposition of the taxes was provided for in the statute.

The simple reading of the statute shows that this is the true construction of the act and no argument can as it seems to us make it any plainer.   The direction that these taxes shall be paid for thirty years is founded upon the prior direction in the same section that the bonds shall "become due and payable at the expiration of thirty years from their date."   In respect to the length of the time for the maturing of the bonds, the acts of 1869 and 1871 differ from the special acts under which the bonds herein were issued, as the special acts provided for a term not exceeding thirty years, and the bonds were in truth made payable and were paid much earlier.

It is therefore not to be doubted that the direction that the

taxes for thirty years should be paid to the county treasurer, when read in connection with the whole section, means and was intended to mean that the taxes should be so paid during the period of the running of the bonds to maturity.

Now, assuming that the acts of 1869 and 1871 are applicable to the bonds issued under the special acts, which is what the respondents claim, we must at the same time keep the purpose of the general acts in view and the language used therein must be viewed with reference to the whole subject matter upon which the enactment is to operate. When thus regarded it is seen that the direction to pay the taxes for thirty years is not a purely arbitrary period of time selected by the legislature without particular purpose, but that it obviously has reference to the period when the bonds spoken of in the same act would necessarily mature. It is we think plain from a perusal of the whole language of the acts upon this subject that the purpose was to provide this aid to the towns only during the period when the bonds were outstanding and by the terms of the act not payable. This purpose is to be attributed to the act when applying this provision to bonds issued under special acts and payable in less than thirty years from their date. In no case, however, could such payments be made after the expiration of thirty years, even if bonds were still outstanding.

We are aware of no principle in law or equity by reference to which a party who is the principal debtor can be regarded as subrogated to the rights of his creditor by the payment of the debtor's own debt at the time it matures and according to his promise. The fact that during some portion of the time of the running of the bonds the town had the right to call upon the county treasurer to expend the taxes spoken of for the benefit of the town, as provided for in the statute, and neglected to enforce such right for more than six years after the last taxes were collected, prior to the payment of the bonds, can furnish no ground for the application of any principle of subrogation. It has also been said in some of the reported cases that the act itself appropriates the moneys to

the purposes mentioned therein and the statement is unquestionably correct. The appropriation is made, however, only during the time there are bonds outstanding, and subsequent to that time there is no appropriation because there are no bonds to be paid.

The orders of the General and Special Terms should be reversed and the mandamus granted in regard to all cases where the bonds were paid before the assessment and collection of the taxes upon the property of the railroad company in the respective towns, with costs to the relators in all courts.

All concur

Ordered accordingly.