BENJAMIN W. JONES, Respondent, *v.* HENRY J. NEWTON, Appellant.

*The words, "Payment guaranteed," written on bills of merchandise by the vendee, do not transfer the original into a collateral agreement.*

The use of the words "Payment guaranteed," written by an alleged vendee upon bills of merchandise made out to him by the vendor, does not tend to vary the original agreement between the parties nor to turn the sale into a guaranty; and where such person was the principal debtor, the use of such words amounts to nothing more than his guaranty of his own debt, which is not a collateral but an original undertaking.

APPEAL by the defendant, Henry J. Newton, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of January, 1894, upon the verdict of a jury directed by the court after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 23d day of January, 1894, denying the defendant's motion to set aside the verdict upon the minutes.

*E. H. Benn*, for the appellant.

*W. L. Snyder*, for the respondent.

BARRETT, J.:

Upon the uncontradicted testimony in this case a verdict was properly directed for the plaintiff. The goods were delivered to Van Gelder upon the defendant's original undertaking. Credit was given solely to the defendant and the goods were charged to him. The goods were sold in the year 1891. The course of dealing between the parties was as follows: Upon the delivery of the goods to Van Gelder the latter receipted therefor. A bill was then made out to Newton. This bill (accompanied with Van Gelder's receipt) was sent to Newton, who wrote across its face, "Payment guaranteed, H. J. Newton." This course of dealing had continued for four years. It originated after the failure of Van Gelder Bros. That firm, in the year 1887, made an assignment to Newton, who was willing to help them. As they had no credit and wanted goods, Newton told the plaintiff's agent, one Sharts, that he would guarantee sales made to them by the plaintiff. Accordingly a sale was made. The first bill was charged to Van Gelder Bros., and the

defendant, in execution of his guaranty, was required to and did give his note for the amount thereof payable in two months. The bill read: "Terms, 60 days note of Henry J. Newton." The correspondence with regard to this transaction settled all future questions as to whether the defendant was to be a guarantor or an original undertaker. Sharts wrote to Newton on the 25th of May, 1887, as follows:

"Mr. HENRY J. NEWTON, 436 West 16th street, New York:

"DEAR SIR — The writer (after seeing you last Monday) called on Van Gelder Bros. and reported to them the result of our interview. They are anxious to get the skins from me with as little delay as possible, *so if you will be kind enough to sign the enclosed note for* $308.70, *and return it to me, Van Gelder can obtain the goods at once.* Please fill in on the note where you want the note made payable, *i. e.*, at what bank. Your attention to the above will oblige,          Yours, very truly,

"B. W. JONES — F. H. SHARTS."

To this Newton, on the next day, sent the following answer:

"Mr. B. W. JONES:

"DEAR SIR — Yours with bill for goods to Van Gelder Bros. and note came to hand this morning. My understanding with the gentleman from your house, who called on me, was that the goods *should be billed to me, and in future you will please bill all goods delivered to Van Gelder Bros. to me, and send me bill when delivered.*          Very respectfully yours,

"HENRY J. NEWTON."

Sharts replied May 27, 1887, as follows:

"HENRY J. NEWTON, Esq., 430 West 16th street, New York:

"DEAR SIR — Your favor of 26th inst. received with note at two months from the 26th of May (due July 29th) for three hundred and eight .70 dollars in settlement of bill for salted skins, dated May 25th. I have made out the invoice in your name instead of Van Gelder Bros., and enclose it herewith. The two casks of skins were delivered to Van Gelder Bros. this day. Thanking you for the note, I remain          Yours, very truly,

"B. W. JONES — F. H. SHARTS."

Thereafter all bills were made out directly to the defendant, and the goods, as delivered from time to time to Van Gelder Bros., were charged to him.

Charles Van Gelder went out of the firm of Van Gelder Bros. on the 1st of February, 1888, and thereafter the same course of dealing proceeded with regard to Henry Van Gelder. This also is evidenced by the defendant's letters. Thus, in July, 1888, he wrote to the plaintiff as follows:

"NEW YORK, *July 23rd*, 1888.

"Mr. B. W. JONES :

"DEAR SIR — As I expect to be out of town most of the time until Sept. 1st next, you will please *let Mr. Henry Van Gelder have such goods as he may require to successfully carry on his business during my absence, and I will be responsible for the same.*

"Yours very respectfully,

"HENRY J. NEWTON."

And again in July, 1889 :

"NEW YORK, *July 17th*, 1889.

"B. W. JONES, Esq. :

"DEAR SIR — This is to certify that during my absence from the city you are authorized to furnish Mr. Henry Van Gelder with goods in his line *as heretofore,* for which you may consider me responsible, *as usual.* On my return to the city I will notify you, and *then a return to the ordinary method will be in order.*

"Yours respectfully,

"HENRY J. NEWTON."

Upon each of the twenty-six bills sold in 1891, which form the subject of this action, the "return to the ordinary method" is evidenced by these undisputed facts: That each bill was made out and rendered to H. J. Newton ; was accompanied by Henry Van Gelder's receipt, and was identified and approved by the words, "Payment guaranteed, H. J. Newton," written across its face by the defendant.

It is clear upon this state of facts that there was nothing to go to the jury, and that the defendant was liable upon his original undertaking. He chose to bind himself in that manner rather than give his note each time that Van Gelder purchased a bill of goods.

He knew that a guaranty meant the giving of his note before the

plaintiff would trust Van Gelder with the goods. This was evidenced by Sharts' letter with regard to the first purchase. To avoid that inconvenience he deliberately chose the obligation of a direct sale to himself, with sixty days' credit. His present claim, therefore, that he was a mere guarantor, is both disingenuous and frivolous. He was clearly liable for every bill made out in his name which, when sent to him, was accepted, such acceptance being evidenced by the words, " Payment guaranteed, H. J. Newton," written across the face thereof.

The direction was, therefore, right.

As to the rulings upon evidence, we think the court committed no error. Van Gelder was asked whether he or Newton purchased the goods ; whether they were purchased for him in his business or for Newton ; whether Newton had any interest in his business ; whether he was acting as Newton's agent ; whether the goods were charged to him or to Newton ; whether he was authorized to purchase for Newton, and a host of similar questions. Newton, too, was asked whether he ever purchased any goods of plaintiff, and whether he had any interest in Van Gelder's business.

All these questions were properly excluded. Many of them involved mere conclusions. The object could only have been to induce the witnesses to deny the legal effect of the documentary evidence. Not a question was asked calling for any conversation, agreement or actual transaction between the parties ; nothing suggestive of a new or different arrangement from that evidenced by the defendant's own signature. It is clear that the defendant could not, in the way attempted by these questions, vary the conclusive effect of the real transaction. We are referred to a class of cases where the admission of what, upon the surface, might seem to be conclusions of witnesses, was sustained. (*Caspar* v. *O'Brien*, 47 How. 80 ; *Sweet* v. *Tuttle*, 14 N. Y. 472 ; *Smith* v. *Knapp*, 27 id. 281, 282.)

In these and similar cases, however, the question admitted had no direct relation to the subject of the inquiry. Thus, in *Caspar* v. *O'Brien*, the question was as to the fact of naked ownership at a particular time, while, as the court said, " the issue to be determined by the jury involved the *bona fides* of the possession and ownership at the time of the loan made by the plaintiff." In each of the cases

the witness was permitted to testify to some particular fact actually within his knowledge, not to his conclusion from such fact. The questions here attempted to be put "were," as Judge FREEDMAN said in *Caspar* v. *O'Brien* (*supra*), "subject to the criticism that they or either of them embraced the whole merits of the case and left nothing for either court or jury to decide."

As to certain other questions, not necessary to be enumerated, they were either incompetent or immaterial. It was, for instance, quite immaterial whether Van Gelder was acting as Newton's agent or acting for himself with Newton's support. The fact was that Newton lent Van Gelder his credit and that he made himself responsible for the purchases. As to the question put to Van Gelder — "What was your arrangement with Mr. Jones when you purchased the goods of him?" — it is enough to say that the witness testified that originally he made no arrangement with Jones; that he was ashamed to go to him, and that the arrangement was made directly between Jones and Newton. There was no suggestion of a different arrangement with regard to the goods in question, nor was it intimated that the inquiry related to a new arrangement. If the defendant, by any of these questions, intended to show any variation in the existing agreement, he should certainly have avowed his purpose, and put his questions accordingly. But, even if he had avowed such a purpose, we think the questions as put were still improper. We may add that the only time the defendant's counsel hinted at the possibility of a somewhat different arrangement the court said : "If he (the defendant) can testify to any conversation with the plaintiff's agent that is all very well. He may do so." But no such conversation was asked for.

The use of the words " payment guaranteed " upon the bills made out to the defendant did not tend to vary the original undertaking or to turn it into a guaranty. That was simply the form used to express approval of each particular transaction. It amounted to nothing more than the defendant's guaranty of his own debt, which, under the authorities, is not a collateral but an original undertaking. (*Fowler* v. *Clearwater*, 35 Barb. 143 ; *Brown* v. *Curtiss*, 2 Comst. 225 ; *Cardell* v. *McNiel*, 21 N. Y. 336 ; *Johnson* v. *Gilbert*, 4 Hill, 178.)

There was nothing in the conversation between Van Gelder and

the plaintiff, wherein the former asked advice as to whether he should continue in business, which affected the transaction. Jones then made no agreement to extend the existing credit or to change the existing relation of the parties. He neither said nor did anything which could prejudice the defendant. He was simply asked for his advice as to whether Van Gelder should go on. His answer was that Van Gelder ought to be the best judge of what he should do. Finally, when pressed, he asked Sharts what he thought, and when Sharts answered, " I think he had better go on," the plaintiff added, " Well, I do too." The contention that the defendant was entitled to notice of this conversation from Jones, and was in some way defrauded because such notice was not given him, is hardly worthy of consideration.

The judgment appealed from and the order denying the defendant's motion for a new trial should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order affirmed, with costs.