Keating, J.
These two actions, both having their origins in the great ‘ ‘ salad oil swindle ’ ’, are here by leave of the Appellate Division on a certified question and present a common issue of procedural law. The plaintiff in each case is a trustee in bankruptcy for one of the victims of the financial and other manipulations of one Anthony De Angelis, president of the Allied Crude Vegetable Oil Refining Corporation. It was the collapse of De Angelis and Allied in November, 1963 which precipitated the disaster engulfing D. R. Comenzo, Inc., and Ira Haupt & Co., two brokerage houses and the cestuis of the plaintiffs.
Both Comenzo and Haupt had held warehouse receipts representing commodities in storage on Allied’s premises as security for credit extended by them. It is claimed the receipts were fraudulent, forged or counterfeit. Plaintiffs have brought separate actions seeking recovery on broker’s bonds issued by the defendant insurance companies to recover the losses incurred. The insurers have not made any payments and, moreover, contest their liability under their respective bonds.
Both insurers subsequently impleaded American Express Company (Amexco). They allege that the losses were the fault of the field warehouse companies which were charged with the duty of supervision of Allied’s tanks. They both allege that Amexco is also chargeable with the losses sustained because it so dominated and controlled its subsidiary, American Express Warehousing, Ltd., that the latter was the mere instrumentality of Amexco. The third-party complaints demand judgment over against Amexco if the plaintiffs recover against the defendant insurance companies.
In the Krause action, both the trustee and Amexco moved to dismiss the third-party complaint on the grounds that it failed to state a cause of action and that the insurer lacked legal capacity to sue (CPLR 3211, subd. [a], pars. 7, 3). Alternative relief in the form of a stay of all proceedings in the third-party action was also asked (CPLR 2201). Special Term granted the motions to dismiss, holding that the insurer’s action was premature. It had no standing, the court held, to bring the third-party action because its rights were based on a claim by way of subrogation and those rights accrued only on payment to the insured. On appeal, the Appellate Division, by a closely divided court, reversed, reinstated the third-party complaint and *152 denied the motion for a stay. The majority held that the inter-pleader statute (CPLR 1007) permits a third-party action based on subrogation even where no payment has been made. The dissenting Justices were of the view that our decision in Ross v. Pawtucket Mut. Ins. Co. (13 N Y 2d 233) precluded a third-party action. “ [Wjhere an insurer has not made any payments under a policy ‘ it has not acquired the right or color of a present cause of action ’ in subrogation ” (27 A D 2d 353, 357).
Since the Appellate Division held that dismissal of the third-party complaint was improper, the court found it necessary to reach the question of the request for a stay on the ground it would delay and prejudice the main action. The majority concluded that, while a general stay was unnecessary, the denial would be ‘ ‘ without prejudice to an application to sever the third-party action in the event that the main action or any proceeding in it is sought to be delayed or adjourned by virtue of any proceeding in the third-party action or the incompleteness of any proceeding in that action ” (supra, pp. 356-357).
In the Seligson action, only Amexco is the moving party. The same relief in the alternative as in Krause is sought. Two additional grounds for a stay were urged. First, a settlement between Haupt and Amexco was then in the offing under the terms of which Haupt would deliver a general release to Amexco. Second, pending the consummation of such settlement, Haupt had agreed not to prosecute an action it had brought in Supreme Court, New York County, against Amexco. It was alleged that the latter provision was binding on the insurer. Special Term denied the motion to dismiss, but granted a stay. Amexco appealed from the denial of the dismissal, while the insurer did not appeal the granting of the stay. On Amexco’s appeal, the Appellate Division unanimously affirmed (28 A D 2d 672), one Justice concurring on constraint of the Krause decision.
We conclude that the disposition made by the Appellate Division in each action was correct. Were we writing on a completely blank tablet, there would be absolutely no difficulty in holding, on the basis of statutory language, policy and fairness to the defendant, that the decisions below are sound.
The language of CPLR 1007 permits the defendant to implead any person “ who is or may be liable to him ” and is certainly *153 broad enough to encompass contingent claims based on subrogation (Madison Ave. Props. Corp. v. Royal Ins. Co., 281 App. Div. 641; see Twelfth Annual Report of N. Y. Judicial Council, 1946, pp. 202-203; St. Paul Fire & Mar. Ins. Co. v. United States Lines Co., 258 F. 2d 374 [interpreting the same language in subdivision (a) of rule 14 of the Federal Rules of Civil Procedure]). Logically, there is no difference in terms of maturity of an action based on subrogation, as opposed to indemnity, because in either situation the cause of action only accrues upon payment or the determination of liability. Moreover, a subrogee has as strong an interest in protecting its claim over as does an indemnitor.
Nor can it be denied that to permit impleader is in full accord with the spirit of an advanced practice code which seeks ‘ ‘ the avoidance of multiplicity and circuity of action, and the determination of the primary liability as well as the ultimate liability in one proceeding, whenever convenient ” (Eleventh Annual Report of N. Y. Judicial Council, 1945, p. 58; see, also, B.M.C. Mfg. Corp. v. Tarshis, 278 App. Div. 266).
It is, however, argued that to allow impleader would delay recovery by the insured, subject the alleged tort-feasor to multiple suits by all potential subrogees, involve the insured in a protracted and highly complex litigation in which it has no interest or concern, deprive the insured of control of its claim against the tort-feasor, impede a settlement between the insured and tort-feasor, create an incentive for the insurer to disclaim, and impose unnecessary litigation costs upon the plaintiff.[1] Most of the arguments are without merit, and almost all those which do militate against permitting impleader can be adequately answered by the liberal and effective use of various procedural devices provided for in the Civil Practice Law and Rules. Severances, separate trials and stays can be employed to avoid any possible prejudice, and the Appellate Division in the Krause *154 action expressly indicated it would grant a stay if plaintiffs made a showing of prejudicial delay. (See, e.g., Lenzner Corp. v. Aetna Cas. & Sur. Co., 20 A D 2d 305.) Likewise, any possible prejudice to the third-party defendant arising from multiple suits by subrogees can easily be cured by motions for consolidation or joint trials.
The argument that the insured is being involved in a case in which it has no interest or concern is difficult to understand.. If such is indeed the plaintiff’s position, the problem is easily resolved. The plaintiff need not participate in the preliminary phases of the litigation involving the third-party complaint and, when plaintiff’s own case is ready for trial, it can then move for a separate trial of the issues raised by the complaint.
The assertion that the insured will be deprived of control of his claim against the alleged tort-feasor is of no merit as is the similar argument that it will delay settlements between the two. The insured is free to press on with its claim or, if no payment has been made by the insurer, settle, as the insured desires.[2] (Cf. Ocean Acc. & Guar. Corp. v. Hooker Electrochem. Co., 240 N. Y. 37.)
The contention that allowing impleader in this type of case creates an incentive for the insurer to disclaim is weakened by the fact that statutory interest is payable from the date of the loss. Moreover, where what is involved is a claim for several million dollars on a broker’s bond involving serious liability questions, it cannot reasonably be suggested that impleader substantially increases the incentive on the part of the insurer to litigate its liability. Simple prudence would require that the insurer carefully examine the validity of a two million dollar claim and litigate any issue it can in good faith raise.
The only significant difficulty arising from allowing impleader would be that the plaintiff might have to incur the expense of litigating the claim against the tort-feasor sooner than it might have wished or, if the insured is made whole by a recovery *155 against the insurer, the insured would sustain an unnecessary expense. Countering this consideration is the fact that much of the cost of preparing the claim against the trot-feasor can be shared with the insurer.
Moreover, whatever additional expense to the plaintiff there may be is more than balanced by the advantages of judicial efficiency and the extreme injustice to the subrogee or, in this ease, the insurers, if they are required to await the disposition of the main claim before commencing a third-party action. The opportunity to gather evidence and prepare a claim may be irretrievably lost. Furthermore, the insurer’s subrogation claim may become time-barred if the plaintiff does not commence suit against the tort-feasor (see Exchange Mut. Ind. Ins. Co. v. Central Hudson Gas & Elec. Co., 243 N. Y. 75).
The dissent is premised upon the argument that the premiums paid by the insured purchased not only insurance but the right to foreclose an insurer from bringing any third-party action against a tort-feasor until such time as the insurer agrees to pay the insured’s claim. No language in the insurance policy supports this position. More importantly, the dissent would give the insured a powerful litigation weapon by which it may obtain substantial advantages unrelated to the merits of its claim. As a practical matter, were impleader denied, the insurer would have to make a choice between its defense to the main action and its subrogation rights. The decision would, of course, have to be made upon an evaluation of the relative merits of each claim and the probabilities of success in each instance, but it would be a decision made in partial or complete ignorance of the real merits of the claim against the alleged tort-feasor since the insurer would have no discovery rights. Thus, the insurer may be put in the position, on the one hand, of having to pay the insured substantial sums of money on questionable claims in order to preserve its subrogation rights, or, on the other hand, it may have to forego the opportunity to prepare what might well have proved to be an excellent case against the alleged tort-feasor. This should not be. Procedural rules exist to further the ends of justice, not to force parties to forego substantive rights and not to give parties advantages which the true merits of their claims or defenses do not warrant. Consequently, absent an unambiguous covenant by the insurer *156 not to sue the alleged tort-feasor prior to payment of the insured’s claim, elemental fairness and the underlying policies of the Civil Practice Law and Rules demand that the insurer should not be required to make an election between its defense to the main action and its subrogation rights.
The dissent in Krause below and all the appellants here rely on Ross v. Pawtucket Mut. Ins. Co. (13 N Y 2d 233). Ross’ automobile was damaged in a collision with a car owned by one Moss. Ross brought an action against his collision insurance carrier when they were unable to agree as to the amount of damages. The carrier sought to implead Moss. We held that, absent payment, the insurer had no standing to implead the alleged tort-feasor.
The Appellate Division distinguished Ross on the ground that here there are no restrictions placed on the subrogation rights, while the policy in Ross provided that there would be subrogation only “ in the event that any payment for any collision loss is made ” (supra, p. 235).
It is true, as the Appellate Division noted, that the parties to an insurance contract can covenant that the insurer shall have no right to sue the third party until the insurer’s liability has been established or the claim paid in part or in full. Here, there was no such covenant. Therefore, in this connection, the Appellate Division’s analysis of Ross would seem correct. (Lenzner Corp. v. Aetna Cas. & Sur. Co., supra; 50 New Walden v. Federal Ins. Co., 22 A D 2d 4.) Still, Ross also rests on the broader ground that impleader should not be allowed to an insurer whose claim is based upon rights to be gained by subrogation, and, as has already been indicated, we do not accept this approach.
Although we are in disagreement with this particular rationale of the decision, on its facts Ross is clearly correct. Automobile collision cases are numerous and involve minor claims, and the very purpose of collision insurance is to permit the insured to collect his damages promptly and use the funds to repair his car. Consequently, as a matter of judicial discretion, impleader can properly be denied in such cases in order to reduce court congestion and' to assure that the prime object of the collision policy is not frustrated by the judicial process. *157 (2 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 1007.02, pp. 10-86.1 — 10-86.2.)
These considerations do not arise in the instant cases since the primary purpose of a broker’s bond is not quick payment of small losses, but protection from ruinous losses. Thus, unlike the case with automobile collision policies, whatever additional delay might be incurred in permitting impleader here will not frustrate the main purpose for which the policy was purchased.
The order in each case should be affirmed, with costs, and the certified question answered in the negative.

. Plaintiff in the Krause action urges as a ground entitling him to a stay, an agreement by bank creditors of Comenzo to assume the litigation costs of Amexeo as part of an over-all settlement agreement. This is of no legal significance. An impleaded third-party defendant must always bear the cost of litigation even though the dismissal of the main action may ultimately render the costs completely unnecessary. The principal creditors of plaintiff’s bankrupt here have agreed to assume that burden. They, therefore, have no standing to complain that the agreement may prove burdensome.

. The question of the effect, if.any, on the insured’s rights against the insurer in the event of any settlement between the insured and tort-feasor made without the insurer’s consent is not before us and would exist whether or not impleader were permitted. (Bunge Corp. v. London & Overseas Ins. Co., 64 Cir. 3440 [D. C. S. D. N. Y., Dec. 14, 1967], affd. in part and revd. in part, 394 P. 2d 496; cf. Jones v. Bacon, 145 N. Y. 446; Connecticut Fire Ins. Co. v. Erie Ry. Co., 73 N. Y. 399.)