LAZAROW, RETTIG & SUNDEL, Plaintiff, v CASTLE CAPITAL CORPORATION et al., Defendants.

CASTLE CAPITAL CORPORATION, Defendant and Third-Party Plaintiff-Respondent, v PIONEER PETROLEUM, INC., et al., Third-Party Defendants-Appellants, et al., Third-Party Defendants. (And Another Action.)

LAZAROW, RETTIG & SUNDEL, Plaintiff, v CASTLE CAPITAL CORPORATION et al., Defendants.

CASTLE CAPITAL CORPORATION, Defendant and Third-Party Plaintiff-Appellant-Respondent, v PIONEER PETROLEUM, INC. et al., Third-Party Defendants-Respondents-Appellants, and FRONTIER CORPORATION et al., Third-Party Defendants-Respondents. (And Another Action.)

First Department, July 20, 1978

### APPEARANCES OF COUNSEL

*Paul J. Bschorr* of counsel (*Edward J. M. Little* and *Margaret Murphy* with him on the briefs; *White & Case* and *Carl D. Liggio,* attorneys), for Arthur Young & Company, third-party defendant-appellant.

*Jonathan J. Fink* of counsel (*Robert M. Blum* with him on the briefs; *Danziger, Bangser & Klipstein,* attorneys), for Pioneer Petroleum, Inc., and another, third-party defendants-appellants.

*Jacques L. Debrot* of counsel (*Joseph H. Einstein* and *Steven Mallis* with him on the brief; *Aranow Brodsky Bohlinger Benetar & Einhorn,* attorneys), for Castle Capital Corporation, defendant and third-party plaintiff-respondent.

*Joseph H. Einstein* of counsel (*George Berlstein, Jacques L. Debrot, Terence L. Blackburn* and *John D. Caplan* with him on the briefs; *Aranow Brodsky Bohlinger Benetar & Einhorn,* attorneys), for Castle Capital Corporation, defendant and third-party plaintiff-appellant-respondent.

*Paul J. Bschorr* of counsel (*Edward J. M. Little* and *Margaret Murphy* with him on the briefs; *White & Case* and *Carl D. Liggio,* attorneys), for Arthur Young & Company, third-party

defendant-respondent-appellant and James L. Houghton, third-party defendant-respondent.

*Robert M. Blum* of counsel *(Judy A. Bluestein* and *Jonathan J. Fink* with him on the brief; *Danziger, Bangser & Klipstein,* attorneys), for Pioneer Petroleum, Inc. and another, third-party defendants-respondents-appellants, and for Frontier Corporation and another, third-party defendants-respondents.

*John S. Martin, Jr.,* of counsel *(Martin, Obermaier & Morvillo,* attorneys), for Fidelity Bank, N.A., and another, third-party defendants-respondents.

### OPINION OF THE COURT

BIRNS, J.

Castle Capital Corporation appeals from an order of the Supreme Court, New York County (KORN, J.), entered December 28, 1977 as follows:

1. From the first decretal paragraph dismissing the third-party action against third-party defendants Fidelity Bank, N.A. and estate of Grady D. Harris, Jr., on the ground of lack of jurisdiction;

2. From the second decretal paragraph dismissing the action against third-party defendants Frontier Corporation and Burgher, on the ground of lack of personal jurisdiction;

3. From the third decretal paragraph dismissing the third-party action against third-party defendant Houghton on the ground of lack of personal jurisdiction;

4. From so much of the sixth decretal paragraph as dismissed the first cause of action in the third-party complaint and failed to consolidate for all purposes, the main action with the independent action permitted to be maintained by Castle against Pioneer, estate of William Bradford and Arthur Young & Co.

Arthur Young & Co. appeals from so much of that same order as:

1. Denied the motion to dismiss the only cause of action of the third-party complaint as against it on the ground of inconvenient forum, and

2. Permitted that cause of action to be set up in an independent action against Arthur Young, and ordered that the independent action be consolidated for trial purposes with the main actions.

Pioneer and estate of William D. Bradford appeal from so much of that same order as (1) failed to dismiss the third-party action against them, and (2) permitted an independent action by Castle to be maintained against them.

In a related proceeding, third-party defendants Arthur Young & Co., Pioneer Petroleum and Bradford's estate appeal from an order of the Supreme Court, New York County (KIRSCHENBAUM, J.), entered February 22, 1978, which restrained these appellants and respondent Castle from defending or prosecuting an action brought by Castle in Oklahoma against them.

Plaintiff Lazarow Rettig & Sundel (Lazarow) is a law firm with offices in New York City. Lazarow alleges breach of contract by Castle, Bradford's estate and Pioneer, Inc., of a buy-back guarantee of certain oil lease interests purchased by Lazarow from defendants William Bradford and Pioneer, Inc.

Lazarow purchased a $635,000 interest in an Oklahoma limited partnership, on behalf of certain clients who wished to benefit from oil tax shelters. Bradford and Burgher were two promoters who owned property in Oklahoma which was potentially oil producing. Their companies were Pioneer and Frontier. Bradford and Burgher owned 48% and 24% respectively, of Pioneer. They were the sole owners of Frontier. To induce plaintiff Lazarow to purchase limited partnership interests as tax shelters, Bradford and Pioneer undertook to obtain a loan on behalf of the partnership of at least $800,000 from Fidelity Bank, N.A. located in Oklahoma. Bradford issued a prospectus for the project. Harris, now deceased, was the president of Fidelity. The loan, which was necessary to generate tax benefits, was known as a "carved out production payment" ("COPP") loan. There is some question in this proceeding as to whether or not Bradford and Pioneer ever obtained that loan, and if they did get the loan, it is questionable whether that loan was sufficient to meet the requirements of the Internal Revenue Service to afford the ultimate purchasers a tax shelter.[1]

Castle was a New York corporation acting as a "middle man" to obtain purchasers in the project. Bradford and Pioneer promised to return all moneys to New York purchasers if

---

1. Through the device of the COPP loan, the purchasers of the limited partnership interests expected to reap the rewards of a 180% tax shelter, i.e., every $1 of investment was to result in a tax deduction of approximately $1.80, whereas without the COPP loan the deduction would be "only" 90 cents.

the loan could not be obtained. Likewise, Castle guaranteed repayment if Bradford and Pioneer defaulted. Houghton was an employee of Arthur Young, who drew up the prospectus for Bradford and apparently set up guidelines to comply with the Internal Revenue regulations. Needless to say, this deal fell through and the complaint by Lazarow followed. Castle, in turn, served a third-party complaint against Bradford's estate and Pioneer based upon their failure to perform their primary buy-back obligation, and against all third-party defendants for fraud and conspiracy in connection with the over-all transaction.

In answering the various questions raised, it should be observed that Castle also started an independent action in Oklahoma against all the third-party defendants in this case. Castle stated that it wished to protect itself in the event the third-party complaint now before us was dismissed. Castle claims that by starting the Oklahoma action, it would avoid the bar of the Oklahoma Statute of Limitations. On oral argument, we were informed that although the Oklahoma court recently dismissed that independent action against all the third-party defendants because the New York action was pending, the Oklahoma action has been reinstated or commenced anew and is still viable. We are also informed that there is a class action in Oklahoma initiated by investors in all of the Bradford partnerships. Castle is not eligible to join in that action because its claim against third-party defendants arises out of the primary actions by Lazarow and Schwartzman against Castle.

The first question raised on this appeal is whether the third-party actions against defendants Fidelity Bank and the estate of Grady D. Harris can be maintained in New York. Special Term found that since Fidelity is a national bank it could only be sued in a State court in a county where the bank is located (US Code, tit 12, § 94; *Stephen-Leedom Carpet Co. v Republic Nat. Bank of Dallas,* 25 AD2d 645). Special Term went on to find that in the transactions at issue herein, Harris acted in his capacity as president of Fidelity, and not in his individual capacity, and thereby reasoned that the court had no jurisdiction over Fidelity or Harris' estate. We disagree.

The question in this case is not whether section 94 of title 12 of the US Code applies to protect a national bank which is sued directly as a defendant, but rather whether a defendant

and third-party plaintiff which finds itself being sued in a New York court is barred from litigating its claims in one action, if it has a claim over against a national bank situated in another county or another State. The authorities are not uniform, but we are of the view that venue may attach to a foreign national bank if a third-party action is brought in good faith in a State or county other than the one where the bank has its office.

There are cases holding that section 94 of title 12 of the US Code applies even to third-party complaints (*Southeast Guar. Trust Co. v Rodman & Renshaw,* 358 F Supp 1001; *Swiss Israel Trade Bank v Mobley,* 319 F Supp 374), but we decline to follow them.

We are persuaded by the reasoning of *Odette v Shearson, Hammill & Co.,* 394 F Supp 946, wherein the court held that since the national bank was a third-party defendant pursuant to Federal rule 14 (subd [a], [Rules of Civ Pro, rule 14, subd [a]; US Code, tit 28]), and that the purpose of that rule was to avoid multiplicity of actions, the bank could not successfully press a motion to dismiss the action based on section 94 of title 12 of the US Code (394 F Supp, at p 952). Similarly, in *Jones v Kreminski,* 404 F Supp 667, 668-669, the court held: "[T]he facts and policies which compelled and justified the preference given to a national bank when the action against it was brought by an original plaintiff cannot be applied when the suit is brought by a person who is himself a defendant in the action. The fact that he is a defendant, and therefore had no choice in the venue of the action, means that the control over that choice which Congress attempted to exert in the National Bank Act is not applicable."

Therefore, we cannot agree with Special Term's dismissal as against Fidelity Bank based upon section 94 of title 12 of the US Code.[2] It follows, perforce, that New York may maintain jurisdiction over the estate of Harris. Apparently Special Term reasoned that Harris, as an officer of Fidelity Bank, obtained the same protection that Fidelity Bank was entitled to under the act. Without that protection, Harris' estate is subject to New York jurisdiction if long-arm jurisdiction otherwise attaches (*Rosenfeld v Hotel Corp. of Amer.,* 20 NY2d 25, 30; *Bailey v Diamond Int. Corp.,* 47 AD2d 363, 367).

---

2. But compare *Mercantile Nat. Bank v Langdeau* (371 US 555, 562-563). Although this case appears to support Special Term's position, we note that the opinion does not discuss third-party actions.

■ We next address the question of New York's jurisdiction over third-party defendants Frontier, Pioneer, Burgher, Bradford's estate, Fidelity Bank, Harris' estate and Houghton under CPLR 302. In determining this issue, it must be kept in mind that the motion reviewed on appeal was one to dismiss and not one for summary judgment. Accordingly, the third-party complaint must be viewed in a manner most favorable to the position of third-party plaintiff, Castle (*Williams v Williams,* 23 NY2d 592). Upon review of this record we find that Castle has made a showing of purposeful concerted activity by third-party defendants sufficient in scope to satisfy the jurisdictional requirements of CPLR 302, and sufficient in quality to warrant denial of third-party defendants' motions to dismiss (see *Peterson v Spartan Inds.,* 33 NY2d 463).

For example, the pleadings are supplemented by an extensive affidavit of counsel for Castle, supported by documentary evidence, presenting the broad outlines of a fraudulent conspiracy to obtain money from New York citizens, and misrepresentations calculated to induce Castle to give a guarantee of the buy-back obligations of Bradford and Pioneer. We may consider this affidavit to determine whether Castle has a potentially meritorious claim against third-party defendants (*Rovello v Orofino Realty Co.,* 40 NY2d 633, 635-636). The affidavit asserts that Bradford issued a false prospectus which was delivered to New York investors and that he made numerous misrepresentations to New Yorkers; that Houghton and Arthur Young structured the transaction, issued a misleading opinion letter incorporated in the prospectus, and prepared other documents to further the investment scheme. Harris and Fidelity are alleged to have supplied false documents indicating the making of COPP loans when, in fact, none were made. Harris delivered a letter to an officer of Castle in New York stating that a COPP loan had been made by Fidelity on another set of Bradford partnerships, but failed to disclose in that letter that the COPP loan which had been disbursed to Pioneer was done in a manner improper for tax purposes. Although the scheme involved Oklahoma oil wells and the defendants are located in Oklahoma, the contracts were executed in New York, plaintiffs Lazarow, Schwartzman, and defendant and third-party plaintiff Castle are located in New York. Correspondence and documents are alleged to have been received in New York, telephone calls were made to and from New York, the venture was directed at and attracted

New York investors, and Bradford was in New York on a continuous basis on behalf of the venture to obtain the participation of New York citizens. In short, it is alleged that all of the third-party defendants participated in Bradford's actions in New York to promote the venture.

The foregoing facts are sufficient to warrant a denial, at least at this early stage of the proceedings, of third-party defendants' motions to dismiss on the ground of lack of personal jurisdiction (*Parke-Bernet Galleries v Franklyn,* 26 NY2d 13; *Longines-Wittnauer v Barnes & Reinecke,* 15 NY2d 443; *Reeves v Phillips,* 54 AD2d 854; *Naples v City of New York,* 34 AD2d 577; *Ghazoul v International Mgt. Servs.,* 398 F Supp 307; see, also, *Fantis Foods v Standard Importing Co.,* 63 AD2d 52).

The foregoing facts also persuade us that third-party defendants have not shown, on the issue of inconvenient forum, that the balance of factors is so strongly in their favor as to require disturbing Castle's "choice" of forum (*Silver v Great Amer. Ins. Co.,* 29 NY2d 356; *ABKCO Ind. v Lennon,* 52 AD2d 435; *Olympic Corp. v Societe Generale,* 462 F2d 376). Moreover, we observe that the choice of forum was not freely made by Castle. As defendant and third-party plaintiff, Castle must litigate in New York to have all the parties' rights and obligations determined in one action, and to avoid the risk of inconsistent verdicts.

Frontier suggests that it cannot be held liable under the third-party complaint because Frontier did not come into existence until December 29, 1972, after the alleged wrongful conduct occurred. However, this fact alone will not permit Frontier to escape liability. It is alleged that Frontier was organized as part of and in furtherance of the conspiracy. Frontier was owned solely by third-party defendants Bradford and Burgher and allegedly received $2 million of investment funds on the very day it came into existence. Bradford and Burgher allegedly utilized the new corporate enterprise, Frontier, as an integral part of the scheme. Because there are no stockholders who did not participate in the earlier enterprise, the corporation can be held responsible for its predecessor's debts and obligations (see *Matter of Reif [Williams Sportswear],* 9 NY2d 387, 393).

In some cases this court has deemed it appropriate to direct a judicial hearing on the jurisdictional issue or a reference to determine jurisdictional facts. However, we find the issue of

jurisdiction on the present record to be so commingled with the merits of the case that it would be impracticable to hold a separate hearing on jurisdiction alone. We therefore hold that each of the third-party defendants' motions to dismiss should be denied without prejudice to the assertion of the jurisdictional objections by affirmative defense in their respective answers (see *Reeves v Phillips,* 54 AD2d 854, 855, *supra).*

■ Special Term concluded that Castle's pleading against third-party defendants, premised upon fraud and misrepresentation, could not be sustained as a third-party claim. We are of the view that Castle's third-party action falls within the ambit of CPLR 1007, providing that a defendant may proceed against a person not a party, who is or may be liable to him for all or part of a plaintiff's claim against him. The impleader should have been granted to avoid multiplicity of actions and to provide determination of the primary liability as well as the ultimate liability in one proceeding *(Krause v American Guar. & Liab. Ins. Co.,* 22 NY2d 147, 153).

In *Norman Co. v County of Nassau* (63 Misc 2d 965, 969-970) Justice BERNARD MEYER observed that a third-party claim does not have to rest on the same cause of action or the same ground as the claim against the third-party plaintiff. The best test is simply whether the third-party defendant may be liable to the third-party plaintiff for damages for which the latter may be liable to plaintiff. A sufficient relationship between the controversies exists when the acts of a third-party defendant have exposed defendant (third-party plaintiff) to judgment for damages for which the third-party defendant can be required to answer to defendant.

■ We turn now to the appeal by third-party defendants Pioneer, Bradford's estate and Arthur Young & Co. from Justice KIRSCHENBAUM's order in favor of third-party plaintiff Castle, enjoining appellants from defending (and Castle from prosecuting) an Oklahoma action identical to that brought by Castle against appellants and other third-party defendants in the New York Supreme Court. Special Term found that Castle had instituted the Oklahoma action to protect itself against the bar of that State's two-year Statute of Limitations and thereby concluded that Castle should be permitted to enjoin the action which Castle brought against appellants in Oklahoma. Special Term found further support for its decision by noting that an order of preliminary injunction would not be against the Oklahoma court but rather in personam against

appellants. We believe the order appealed from should be reversed.

The relevant facts, briefly stated, are as follows: Castle moved in the Oklahoma District Court for a stay, which was denied by Judge WILLIAM S. MYERS, JR., of that court. Castle then moved for a temporary injunction in New York. While that motion was pending before Justice KIRSCHENBAUM, Castle petitioned the Oklahoma Supreme Court for writs of prohibition and mandamus against Judge MYERS. The petition was denied. We therefore have a situation wherein two Oklahoma courts, including that State's highest court, have held that the Oklahoma action, brought against Oklahoma residents by a New York corporation, should proceed.

This court held, in *Latham & Co. v Mayflower Inds.* (278 App Div 90, 94), that only in extreme and extraordinary cases will our courts break the rule of comity which forbids the granting of an injunction to stay proceedings which have been commenced in a foreign court of competent jurisdiction. A foreign suit may be enjoined only if it is clearly shown that the suit sought to be restrained was brought in bad faith, or motivated by fraud or an intent to harass the party seeking the injunction, or if its purpose was to evade the law of the domicile of the parties *(Paramount Pictures v Blumenthal,* 256 App Div 756, 760).

Castle has failed to show that the Oklahoma action should be enjoined as falling within one of the exceptions to the general rule of comity stated above. This is not surprising since it was Castle which commenced the Oklahoma action.

New York's exercise of personal jurisdiction over appellants rests upon application of our long-arm statute (CPLR 302). It is one thing to use this jurisdictional device to require appellants to defend Castle's suit against them in New York; it is quite another to extend that jurisdiction so as to forbid the appealing Oklahoma residents from defending Castle's suit against them in Oklahoma. We think that the long arm of CPLR 302 should not stretch quite that far, absent compelling and extraordinary circumstances notably absent in this case.

In the particular circumstances presented by the bizarre procedural record herein, we find that Special Term's preliminary injunction against appellants constituted an improvident exercise of discretion.

Accordingly, it is unnecessary for us to reach appellants' alternative argument that the Oklahoma court's refusal to

grant Castle's request for a stay is entitled to "Full Faith and Credit" pursuant to section 1 of article IV of the United States Constitution (see *Tinker v Gorman,* 56 Misc 2d 673, 676). We leave that question for another day.

The order of the Supreme Court, New York County (KORN, J.), entered December 28, 1977, should be modified, on the law, to the full extent sought by defendant and third-party plaintiff Castle Corporation and, as so modified, affirmed, and in addition, the order of the Supreme Court, New York County (KIRSCHENBAUM, J.), entered February 22, 1978, which restrained the third-party defendants Pioneer, Bradford's estate and Arthur Young & Co. from defending and Castle Capital Corporation from prosecuting the Oklahoma suit mentioned herein, should be reversed, on the law in the exercise of discretion, and Castle's motion for a preliminary injunction denied, all without costs or disbursements.

Settle order.

MURPHY, P. J., KUPFERMAN, EVANS and SULLIVAN, JJ., concur.

Order, Supreme Court, New York County, entered on December 28, 1977, unanimously modified, on the law, to the full extent sought by defendant and third-party plaintiff Castle Capital Corporation and, as so modified, affirmed, and in addition, the order of said court, entered on February 22, 1978, is unanimously reversed, on the law and in the exercise of discretion, and Castle's motion for a preliminary injunction denied, all without costs and without disbursements.