OPINION OF THE COURT
Jasen, J.
The significant issues on this appeal are whether CPLR 1007 permits a third-party plaintiff to seek damages in excess of the amount demanded by plaintiff in the main action and whether a third-party claim is maintainable in the face of a simultaneous contention that the third-party plaintiff is completely free from liability to the plaintiff in the main action.
This matter arises out of the transfer of a "portfolio” of insurance business, from one insurance agency to another. At issue are the relative rights and liabilities of the buyer, seller, insurance carrier (whose underwriting potential was the stuff transferred) and the attorney who arranged the sale. The instant procedural web was spun about these parties as follows: Plaintiff George Cohen Agency, Inc., the seller, agreed to transfer to defendant-respondents Donald S. Perlman Agency, Inc., and Donald S. Perlman, a specified "portfolio” of insurance business consisting of certain policies issued by Continental Casualty Company. The Perlman Agency and Perlman himself executed promissory notes in payment. These notes, however, were not honored when due. Perlman asserted that the Continental policies were no longer salable because they contravened certain New York Insurance Department regulations and that no payment need be made for the spoiled portfolio. Cohen then sued Perlman for $52,528 on the notes. This is the main action.
In the answer to this main action, and in a counterclaim against Cohen, it was asserted that Cohen, either individually or in concert with Continental and attorney-broker I. Edward Pogoda, attempted to defraud defendants by knowingly inducing them to purchase the worthless package of insurance business. The counterclaim sought rescission or reformation of the contract of sale or, in the alternative, compensatory damages in the amount of $545,000, punitive damages in the *362 amount of $2,500,000, an unspecified amount of money allegedly paid to Cohen, and over $25,000 in attorney’s fees.
The same elements of legal damages, as well as indemnity and contribution for any potential liability of Perlman to Cohen, were demanded in third-party actions brought by Perlman against Continental and attorney Pogoda. These third-party actions, brought pursuant to CPLR 1007, were grounded upon the third-party defendants’ alleged complicity in a conspiracy to defraud Perlman and upon third-party defendant Pogoda’s alleged malpractice and breach of duty as an attorney.
Continental moved to dismiss Perlman’s third-party action, contending: (1) that CPLR 1007 does not permit a third-party plaintiff to demand damages in excess of those demanded in the main action; (2) that no third-party action is maintainable where the third-party plaintiff alleges facts which negate liability on the main action; and (3) that recognition of a third-party action would, in the circumstances of this case, prejudice Continental by impeding its ability to "remove” the case to Federal court. Special Term denied Continental’s motion to dismiss. The Appellate Division unanimously affirmed, as do we.
The law has long recognized the need for a procedure whereby one whose responsibility for an alleged legal wrong is to be tested in a lawsuit may bring before the court another who is claimed by the defendant to have a share in that responsibility so that all claims can be resolved in the one forum. The first procedural device commonly used to achieve this end was the common-law method of preserving one’s indemnity claim against a third party known as "vouching in” or "vouching to warranty”. (See, generally, Hartford Acc. & Ind. Co. v First Nat. Bank & Trust Co. of Hudson, 281 NY 162; Twelfth Ann Report of NY Judicial Council, 1946, pp 197-199; Siegel, New York Practice, § 168, p 207; Comment, Third-Party Practice in New York, 37 Cornell LQ 721-723.) This device, acknowledged to be the forerunner of modern third-party practice, allows a party to bind a potential indemnitor to the result reached in the main action by simply notifying him of the pendency of the action and offering him control of the litigation. No direct judgment is available against the third party when this device is used. However, the procedure at least insures that, under principles of res judicata, the issue of defendant’s liability to plaintiff need not be relitigated in a *363 subsequent suit against the third-party indemnitor. Although still available today, this device is little used, for a much more comprehensive device — impleader — has been created by the Legislature.
The first impleader statute appeared in New York in 1922 as section 193 of the former Civil Practice Act. (L 1922, ch 624.) The basic language of the impleader statute, with minor changes, has been' carried forward to the present day and currently appears as CPLR 1007.* Although the basic structure of the statute has changed little over the years, the interpretation of the statute and, thus, its scope has changed greatly.
Early on, the statute was construed narrowly, requiring that a defendant (third-party plaintiff in the jargon of the statute) demonstrate that his third-party claim was identical to the claim upon which he was being sued by plaintiff in the main action. (See, e.g., Nichols v Clark, MacMullen & Riley, Inc., 261 NY 118.) This interpretation, as might be expected, severely limited the utility of the device. Indeed, it was not until 1946 when the statute was amended that the effect of this restrictive interpretation was alleviated.
The 1946 amendment (L 1946, ch 971) added the following language to the statute: "The claim against such person, hereinafter called the third-party defendant, must be related to the main action by a question of law or fact common to both controversies, but need not rest upon the same cause of action or the sáme ground as the claim asserted against the third-party plaintiff.” (Former Civ Prac Act, § 193-a.) This change signaled the end of the so-called "identity” rule. Interestingly, when the impleader statute was transferred to its present place in CPLR 1007, the above sentence was once again deleted. This amendment, however, did not require a return to the old "identity” rule. Rather, the second operative clause of the above sentence was deleted because practice had *364 so changed that it was now "unnecessary” and the first clause was deleted because, if read literally, it narrowed rather than expanded third-party practice — a result not intended by the revisors. (See Sixth Report of Senate Finance Committee Relative to Revision of Civil Practice Act, NY Legis Doc, 1962, No. 8, p 159; Norman Co. v County of Nassau, 63 Misc 2d 965 [Meyer, J.].) Thus, a review of the history of third-party practice in this State seems to disclose a trend toward liberalization and expansion of the availability of impleader. Recognition of this general trend, however, serves only as a starting point for our inquiry, for the scope of the statute remains unclear.
Indeed, the precise questions raised by this appeal — whether a third-party complaint may seek damages in excess of those sought on the main claim and whether such a claim may be maintained where the third-party plaintiff alleges facts which negate liability — have not yet been addressed by this court. They have been addressed by the lower courts in a way which, while it may not be truly inconsistent, certainly evinces a certain difference of opinion on these issues.
On the issue of "excess” damages, many lower courts have limited third-party practice solely to indemnity claims which do not exceed the amount of the main claim. (See, e.g., Carroll Sheet Metal Works v Mechanical Installations, 201 Misc 689, 690; Victory Painters & Decorators v Miller, 198 Misc 196.) Others have focused upon not only the amount, but also the nature of a third-party claim and the literal language of the statute and have noted that a third-party claim, if it is to be limited to "all or part of the plaintiff’s claim against [a third-party plaintiff]” must "rise from” or be conditioned upon or be otherwise based upon the liability to the plaintiff in the main action. (Cleveland v Farber, 46 AD2d 733; Horn v Ketchum, 27 AD2d 759.) This narrow view of the purpose of the statute would lead, of course, to the conclusion that no "excess” may be claimed.
On the other hand, there has been expressed in some lower courts a more liberal view of third-party practice generally. (See, e.g., Lazarow, Rettig & Sundel v Castle Capital Corp., 63 AD2d 277, 287, revd on other grounds 49 NY2d 508; Funt v Ruiz, 58 AD2d 801; Mallis v Kates, 56 AD2d 818; Norman Co. v County of Nassau, 63 Misc 2d 965, supra.) Such holdings, while they, do not speak directly to the issue of excess recovery, do appear to recognize that although third-party practice *365 has its origins in strict indemnity, it has grown beyond its early limitations and should now be seen primarily as a tool for economical resolution of interrelated lawsuits. We agree with this broad view of the practice.
The current New York impleader statute, although it retains the familiar language limiting a third-party plaintiff to recovery against "a person not a party who is or may be liable to him for all or part of the plaintiff’s claim against him”, should not be read as allowing recovery solely for claims sounding in strict indemnity. While it is true that the doctrine of impleader has its roots in strict indemnity, the history and development of impleader and the language of the current statute indicate that the device is no longer wedded to this single theory of recovery. The language of CPLR 1007 serves only to identify the persons against whom a third-party claim may be brought. It places no limit upon the amount which may be recovered or upon the legal theories which may be asserted as a basis for the claim. Indeed, a narrower reading would subvert the purpose of the statute. It has long been clear that one of the main purposes of third-party practice is " 'the avoidance of multiplicity and circuity of action, and the determination of the primary liability as well as the ultimate liability in one proceeding, whenever convenient’.” (Krause v American Guar. & Liab. Ins. Co., 22 NY2d 147, 153; Eleventh Ann Report of NY Judicial Council, 1945, p 58; see, also, B. M. C. Mfg. Corp. v Tarshis, 278 App Div 266.) In our view, this salutary goal can best be achieved by allowing a third-party plaintiff to plead and prove his entitlement to excess recovery over and above his liability to plaintiff, subject to the trial court’s discretionary power to sever any claim which, in the circumstances of a particular case, appears unduly burdensome. (CPLR 1010.)
The soundness of such a rule becomes apparent upon an examination of the case before us. In the instant case, Perl-man claims that Continental’s acts and omissions caused him to enter into a transaction which may result in a finding that Perlman is liable to Cohen. Inasmuch as Perlman claims that Continental is responsible in part for any potential liability to Cohen, Perlman may implead Continental, making the insurer a party to the suit. Having successfully brought the new third-party defendant into the lawsuit to answer for its alleged wrongdoing, it would seem absurd to limit recovery for such wrongdoing to the amount demanded by plaintiff in the main *366 action, for to do so can only result in an incomplete resolution of the dispute between the parties. Surely, if Perlman is successful on his "idemnity” claim, he will want to recover all the damages caused by the wrongdoing which formed the basis of that claim, including those which exceed the amount demanded by Cohen. If CPLR 1007 is narrowly construed to encompass only strict indemnity, Perlman would be required to commence a separate lawsuit in order to do so. Such a lawsuit would involve precisely the same factual issues as were involved in the main claim and counterclaim and, if brought separately, perhaps out of fear of "splitting” the cause of action (see Siegel, New York Practice, § 220, p 264), would cause an unnecessary drain upon judicial resources and create a risk of inconsistent results.
It is possible, of course, that such a second separate action could be consolidated or tried jointly with the main action. (CPLR 602.) This could provide the same conservation of judicial resources as would a claim for excess damages in a third-party suit. The availability of another procedural remedy is, however, not a reason to narrowly construe the impleader statute. Indeed, it would seem contrary to the modern spirit of liberal pleading to forego one commonsense rule in favor of a needless procedural dance which will arrive at the same result. Thus, we conclude that CPLR 1007 should not be construed as precluding a third-party suit for damages in excess of those demanded in the main action.
Continental also contends that the instant third-party claims should be dismissed because the facts pleaded in the third-party complaint negate any liability of Perlman to Cohen. (See Scivetti v Niagara Mohawk Power Corp., 33 AD2d 884.) We disagree. As noted by the Appellate Division, the facts alleged do not necessarily preclude liability on Perlman’s part. The pleadings, in fact, allege many claims in the alternative, including a claim for indemnity. This type of alternative pleading is clearly permissible and should not result in a dismissal of the third-party complaint.
Finally, Continental contends that Perlman’s third-party complaint should be dismissed because it somehow impedes Continental’s right, as a foreign corporation, to "remove” the case to Federal court pursuant to subdivision (c) of section 1441 of title 28 of the United States Code. This contention is without merit. The doctrine of "removal” is uniquely a Federal power to be exercised by Federal courts, applying Federal *367 law. We see no reason to alter the civil practice of the State of New York to either encourage or discourage the exercise of that power. Thus, while a litigant may well believe that the exercise by the Federal court of its removal power would be beneficial in a particular case, his remedy is merely to seek such removal in Federal court, taking State procedure as he finds it.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the question certified answered in the affirmative.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed, etc.

 CPLR 1007 states:
"§ 1007. When third-party practice allowed.
"After the service of his answer, a defendant may proceed against a person not a party who is or may be liable to him for all or part of the plaintiffs claim against him, by serving upon such person a summons and third-party complaint and all prior pleadings served in the action. A defendant serving a third-party complaint shall be styled a third-party plaintiff and the person so served shall be styled a third-party defendant. The defendant shall also serve a copy of such third-party complaint upon the plaintiffs attorney.”