Gryphon Dom. VI, LLC v APP Intl. Fin. Co. B.V. (2004 NY Slip Op 50598(U))

[*1]

Gryphon Dom. VI, LLC v APP Intl. Fin. Co. B.V.

2004 NY Slip Op 50598(U)

Decided on February 5, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 5, 2004

Supreme Court, New York County
GRYPHON DOMESTIC VI, LLC, et al.
against
APP INTERNATIONAL FINANCE COMPANY B.V., et al. Defendant.
603315/02

Attorney for Plaintiff General Electric: Richards, Spears, Kibbe, Orbe, LLP, One World Financial Center, New York, New York 10281 By: Arthur Greenspan, Esq. 212-530-1800
Attorney for Plaintiff General Electric and Warner Mansion Fund: Theodore L. Hecht, Esq., 52 Vanderbilt Avenue, 14th Floor, New York, New York 10017 212-682-9813
Attorneys for Gryphon Domestic VI, LLC: Cleary Gottlieb, Steen, Hamilton, One Liberty Plaza, New York, New York 10006 By: Deborah M. Buell, Esq. 212-225-2000
Attorneys for Defendants APP International Finance Company: White & Case, LLP, 1155 Avenue of the Americas, New York, New York 10036 By: David G. Hille, Esq. 212-819-8200
Attorneys for Judgment Creditors except Warner Mansion Fund: Siller Wilk LLP, 675 Third Avenue, New York, New York 10017 By: Jay S. Auslander, Esq.

Helen E. Freedman, J.
Motion sequence No.# 005 and 006 are consolidated for joint decision.
In this action by American investors for monies due under certain promissory notes issued and guaranteed by foreign companies, this Court has already awarded the plaintiffs summary judgment. Dec., mot. seq. ## 002 & 003 (Oct. 20, 2003) (the "Decision"). In November 2003, however, the defendants commenced litigation in Indonesia, where the guarantors' collateral is located, to enjoin plaintiffs from enforcing this Court's judgment in Indonesia and to re-litigate the plaintiffs' claims against defendants de novo. Labeling the Indonesian actions as "brazen efforts to nullify this Court's recent ruling," the plaintiffs now move in this Court for an order preliminarily enjoining the defendants from prosecuting the Indonesian actions, and also seek leave to amend their complaint to add, among other things, a claim for a permanent injunction against the Indonesian lawsuits. In opposition, the defendants contend that they had disclosed to the plaintiffs before they invested that the Indonesian courts [*2]would not enforce the judgment of a foreign court and would determine the merits of the plaintiffs' claims de novo, and that the plaintiffs could not enforce their rights to the collateral without a judgment from the Indonesian courts. By choosing to invest in the foreign notes, the defendants add, the plaintiffs assumed and accepted that disclosed risk of re-litigation.
For the reasons set forth below, the motion for a preliminary injunction is denied. Leave to amend the complaint is also denied.
Background The plaintiffs are the beneficial owners of more than 25% of three series of notes (collectively, the "Notes"), in the total principal amount of about $ 250 million, which were issued in June 1994 and guaranteed by the defendants under three separate indentures (collectively, the "Indentures"): (1) the "Indah Kiat 02 Notes", due in 2002, which were issued by the defendant Indah Kiat International Finance Company B.V. ("Indah Kiat Finance"), guaranteed by the defendant Indah Kiat Pulp and Paper Corporation ("Indah Kiat Pulp & Paper"), and governed by the "Indah Kait 02 Indenture" ; (2) the "Indah Kiat 06 Notes", due in 2006, which were issued by Indah Kiat Finance, guaranteed by Indah Kiat Pulp and Paper, and governed by the "Indah Kiat 06 Indenture"; and (3) the "Lontar Notes", due in 2005, which were issued by the defendant APP International Finance Company, B.V. ("APP Finance"), guaranteed by Asia Pulp and Paper Company, Ltd. ("APP Ltd.") and P.T. Lontar Papyrus Pulp & Paper Industry ("Lontar"), and governed by the "APP Indenture." Indah Kiat Finance and APP Finance, the Notes' issuers, are Dutch corporations whose principal places of business are in the Netherlands; APP Ltd. is a Singapore company principally doing business in that country; and Lontar and Indah Kiat Pulp and Paper, are Indonesian companies with principal places of business in Indonesia. The Notes were entirely secured by real and personal property located in Indonesia.
Each Indenture contains identical forum selection and choice of law provisions. The forum selection clauses are non-exclusive:

[The Note issues and guarantor] hereby irrevocably and unconditionally submits to the non-exclusive jurisdiction of any New York State or United States Federal Court sitting in New York City over any suit, action or proceeding arising out of or relating to this Indenture or any Note . . . . The choice of law provisions state that the Indentures and Notes "shall be construed in accordance with and governed by the laws of the State of New York."
Also, the prospectuses issued in connection with the Notes disclosed to prospective investors, in a section called "Enforcement of Foreign Judgments in Indonesia", that any judgment they obtained in connection with the Notes from a United States court would be of limited value in a related proceeding before the Indonesian courts:

Indonesian counsel to [the guarantor of each Note series] has advised [it] that a judgment of a foreign (non-Indonesian) court will not be enforceable by the courts [*3]of Indonesia, although such a judgment could be admissible as evidence in a proceeding on the underlying claim in an Indonesian court. Re-examination of the underlying claim de novo would be required before the Indonesian court.
After the defendants defaulted on payments due under the Notes, the plaintiffs commenced this action. In a decision dated February 4, 2003, the Court dismissed the complaint on the defendants' motion because the original named plaintiffs lacked the capacity to sue under the Indentures, but allowed the plaintiffs to re plead. The plaintiffs served an Amended Complaint on March 11, 2003, which deleted some parties as plaintiffs and added others Thereafter the plaintiffs moved for summary judgment; the defendants opposed primarily on the ground that the plaintiffs were not beneficial owners of the Notes and therefore still lacked capacity to sue. In its Decision, dated October 20, 2003, this Court granted summary judgment to the plaintiffs, finding that they had made an unrefuted showing that they owned the Notes, and that the defendants had failed to raise any other triable issue of fact or valid defense.
On November 13, 2003, Indah Kiat Pulp & Paper, the guarantor of the Indah Kiat 02 and 06 Notes, filed suit in the District Court of Bengkalis in Indonesia ("Indonesian Action I") in which it sought, among other things, (1) annulment of the relevant Notes their related Indentures; (2) a declaration that the plaintiffs in this action are not note-holders entitled to repayment; (3) injunctive relief and conservatory attachment that would prevent the defendants to the Indonesian Action I from enforcing or collecting on the relevant Notes or Indentures, and (4) related damages. Later in November, Lontar commenced a lawsuit in the District Court of Kuala Tungkal ("Indonesian Action II"), in which Lontar seeks, in connection with the Lontar Notes and Indenture, very similar relief to what Indah Kiat Pulp & Paper seeks in Indonesia Action I.
Motion: preliminary injunction A preliminary injunction cannot be granted under CPLR article 63 unless the party seeking it demonstrates that (1) it is likely to succeed on the merits, (2) it risks irreparable injury without the injunction, and (3) the equities favor it. Grant Co. v. Srogi, 52 N.Y.2d 496, 517 (1981). Turning first to the merits, movants are not entitled to a permanent injunction against the defendants' prosecution of the Indonesian Actions. The rule of comity strongly disfavors injunctions that stay ongoing proceedings before a foreign court of competent jurisdiction. See Lazarow, Rettig & Sundel v. Castel Cap. Corp., 63 A.D.2d 277, 288 (1st Dept. 1978). To obtain an anti-suit injunction against a foreign proceeding, the applicant must clearly show that the proceeding "was brought in bad faith, or motivated by fraud or an intent to harass the party seeking the injunction, or if its purpose was to evade the law of the domicile of the parties." Sarepa, S.A. v. Pepisco, Inc., 225 A.D.2d 604, 604 (2d Dept. 1996) (citing cases). Here, the plaintiffs claim that the defendants brought the Indonesian Actions because (1) they lost before this Court and want to re-litigate issues that this Court has already determined and (2) they want to block the plaintiffs from enforcing their judgment. But that motivation does not constitute bad faith, fraud, or harassment, because the prospectuses explicitly advised the plaintiffs in advance that the Indonesian courts would not enforce such a judgment, and that the plaintiffs might be forced to re-litigate their claims there. Thus, under the circumstances of this case, no anti-injunction suit can issue.
[*4]
In support of their claim, the plaintiffs rely heavily on Indosuez Intl. Fin., B.V. v. Natl. Reserve Bank, 304 A.D.2d 429 (1st Dept. 2003) ("Indosuez"), in which the Appellate Division upheld the grant of a permanent injunction against the defendant's pursuit of foreign litigation. The circumstances in Indosuez materially differ from those in this action. In Indosuez, the plaintiff sued to enforce a mandatory forum selection clause in the parties' currency exchange agreements that required the parties to litigate disputes connected with the agreements only in New York. The Court gave a number of reasons why the trial court's grant of a permanent injunction was appropriate: First, comity was not implicated because "there was no possibility of treading on the legitimate prerogatives of the foreign jurisdictions to which defendant had repeatedly turned," in light of the mandatory forum selection and choice of law clauses, and the Court of Appeals' ruling in the parties' earlier action that the defendant could not litigate in Russia.[FN1] Second, the injunction was "consonant with our policy of enforcing choice of law and forum selection clauses." Third, there was a judgment on the merits of the parties' underlying dispute, and the New York courts were entitled to protect it. Finally, "there was clear evidence of defendant's harassing and bad faith foreign litigation." Indosuez, 304 A.D.2d at 430.
The facts in Indosuez and in this action crucially differ. The forum selection clause in the Indentures is non-exclusive: it requires the defendants to submit to the New York courts' jurisdiction, but does not prohibit them from bringing suit in another forum. Unlike in Indosuez, therefore, the defendants did not breach the parties' agreement merely by suing outside of New York, and accordingly the Indonesian Actions possess a legitimacy that the foreign proceedings in Indosuez lacked. Moreover, the defendants' prosecution of the Indonesian Actions does not violate this State's policy of enforcing forum selection clauses, inasmuch as the clauses in question provide for non-exclusive jurisdiction. Finally, this action differs from Indosuez because there has been no showing that the defendant intended to harass the plaintiffs or acted in bad faith by suing in Indonesia.
Although the circumstances here and in Indosuez are alike in that a judgment has been granted in respect of the underlying claims, the material differences between this case and Indosuez render it inapposite. Accordingly, the plaintiffs cannot succeed on their claim for injunctive relief.
Moreover, the plaintiffs have not shown that they risk irreparable injury. The plaintiffs claim that they would be injured by having to engage in "duplicative" litigation in Indonesia, but the plaintiffs knew that they could only enforce their rights to the Indonesian collateral by litigating there. Finally, the equities do not clearly favor plaintiffs, since re-litigation was a pre-disclosed risk of investment that the plaintiffs voluntarily accepted.
 Amendment of pleadings Leave to amend the complaint is denied. The plaintiffs wish to add claims for permanent injunctions and specific performance that would bar the defendants from prosecuting the Indonesian Actions, and for declarations that the Indonesian Actions are [*5]nullities. But it would be futile to let the plaintiffs amend because they are not entitled to the anti-suit injunctions they seek and the related declarations. See Sharon Ava & Co. v. Olympic Tower Assocs., 259 A.D.2d 315, 316 (1st Dept. 1999) (denying leave to amend when proposed amended claims plainly lacked merit).
Extension of TRO By a letter addressed to the Court dated February 2, 2004, the plaintiffs requested that, if this Court denied the motions at hand, it extend two temporary restraining orders currently in place, which enjoined the defendants from prosecuting the Indonesian Actions pending the issuance of this decision and order. On January 12, 2004, the defendants obtained a provisional injunction in Indonesian Action II that restrains the plaintiffs in this action from prosecuting any payment or enforcement action in connection with the Lontar Notes.
Based on the foregoing it is

ORDERED that the motion for preliminary injunctive relief and for leave to amend the complaint is denied, and it is further
ORDERED that the two temporary restraining orders currently in place shall remain until 5:00 p.m. on Monday, February 9, 2004 only.

Footnotes

Footnote 1:See Indosuez Intl. Fin., B.V. v. Natl. Reserve Bank, 98 N.Y.2d 238, 246-48 (2002).